# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-01120-SCT

*ADAM ROSENFELT AND*
*ELEMENT STUDIOS, LLC*

*v.*

*MISSISSIPPI DEVELOPMENT AUTHORITY AND*
*GLENN McCULLOUGH, JR., IN HIS OFFICIAL*
*CAPACITY AS EXECUTIVE DIRECTOR OF THE*
*MISSISSIPPI DEVELOPMENT AUTHORITY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2017 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| TRIAL COURT ATTORNEYS: | MICHAEL B. WALLACE |
| | THORNTON RUSSELL NOBILE |
| | MICHAEL O. GWIN |
| | J. COLLINS WOHNER, JR. |
| | WAVERLY ALMON HARKINS |
| | JANE WALLACE MEYNARDIE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL B. WALLACE |
| | JANE WALLACE MEYNARDIE |
| | THORNTON RUSSELL NOBILE |
| ATTORNEYS FOR APPELLEES: | MICHAEL O. GWIN |
| | J. COLLINS WOHNER, JR. |
| | WAVERLY ALMON HARKINS |
| | LEE DAVIS THAMES, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WALLER, C.J., MAXWELL AND ISHEE, JJ.

### ISHEE, JUSTICE, FOR THE COURT:

¶1. This is a contract dispute between Adam Rosenfelt, a film producer, and the Mississippi Development Authority (MDA). Rosenfelt claims the MDA promised loan guarantees so he could make movies in Mississippi. He made one film, which was not financially successful, and the MDA refused to guarantee the loan for his next project. Rosenfelt now claims the MDA breached a contract with him, personally. We conclude that the actual documents show that any agreement was between the MDA and one or more LLCs, not Rosenfelt personally, and Rosenfelt cannot contradict the written documents with parol evidence. *See Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (Miss. 2012). Rosenfelt therefore has no standing to pursue the claims because any obligations under the alleged contracts are to the LLCs, not Rosenfelt personally. *Bruno v. Se. Servs. Inc.*, 385 So. 2d 620, 622 (Miss. 1980). Furthermore, no error has been shown as to the dismissal of Element Studios, LLC, for want of standing.

¶2. This case also potentially presents a question of first impression regarding the authority of the executive director of the MDA and his agents to bind the MDA in contract without spreading the contract's terms on the MDA's minutes. But because we find that no error has been shown in the circuit court's dismissal of the suit on the basis of standing, that issue is moot and will not be addressed.

## FACTS AND PROCEDURAL HISTORY

¶3. Through "government affairs professionals," Rosenfelt reached out to Mississippi officials to propose his company's plan for the state to "invest" in a new production studio.

2

The name of that studio was to be Mississippix or Mississip-pix, and it was to be located in Mississippi. Rosenfelt testified that after pitching the idea to various officials in the MDA, he met briefly with Governor Phil Bryant. Rosenfelt testified the governor expressed enthusiasm for the plan and that the governor's intent was to "put [the plan] in the 2013 special session." But that never happened, and Rosenfelt testified that he planned to shop the plan to other states.

¶4. The MDA, however, continued to try to find a way to bring Rosenfelt's business to the State. In various emails, Kathy Gelston, MDA's chief financial officer, explained, "The governor wants a commitment, but doesn't want to add anything to the Medicaid special session . . . . We have to think of some kind of contract or something." She forwarded a draft letter to Rosenfelt's representatives containing terms "agreed to by Governor Bryant." On June 27, 2013, Gelston signed the letter. The letter was addressed to Rosenfelt as "President of Element Pictures." It stated,

> Mississippi will commit to your Mississippi Production Investment Plan (attached hereto) for an initial investment of ten million dollars . . . proposed legislation notwithstanding, the initial ten million dollar commitment will be firmly committed by Mississippi and will not be contingent upon proposed legislation being passed by the legislature at any time in the future.

¶5. Rosenfelt claims he relied on this letter in his decision to "not show elsewhere" and to move his family and company to Mississippi. But it turned out that MDA did not have the money. It tried to get it during the 2014 regular session, but that legislation also failed to pass. In an email sent on March 4, 2014, Gelston told Rosenfelt, "I cannot express how sorry

3

I am that you were misled. I will continue to work with you within our current program to try and mitigate the damage."

¶6. Rosenfelt sought assurances that any new agreement would be enforceable. And so MDA's lawyer sent an email to Rosenfelt's lawyer, attached to which was an attorney general opinion that stated "the Executive Director of the MDA is authorized to execute an agreement to guarantee the Loan pursuant to the [small business loan guarantee program] on behalf of the State." Then, on April 7, 2014, MDA Executive Director Brent Christensen drafted a letter to Rosenfelt, again as "President of Element Pictures." The letter stated,

> Mississippi will commit to a revolving loan guarantee of ten million dollars for five years. This guaranty can be utilized on any film over $5 million and under $20 million with a minimum of 50% of the production expenses occurring in Mississippi, and can be used to guarantee up to 80% of the cost of the film.

¶7. During the summer of 2014, Regions Bank agreed to extend a $10 million revolving loan to a company formed by Rosenfelt to finance his first movie in the state—*The Duel* featuring Woody Harrelson. The loan was conditioned on the guaranty promised by MDA's April 7, 2014, letter. But before Rosenfelt and Regions could close on the loan, MDA issued a letter refusing to guarantee the loan. The deal fell through, and Rosenfelt secured emergency financing elsewhere. Eventually, MDA would agree to issue a guaranty for $4 million of a loan provided by Planters Bank.

¶8. After *The Duel* was completed, Rosenfelt reached out to MDA in 2015 to discuss the remainder of the originally promised $10 million guaranty. This resulted in the execution of a "term sheet" on July 1, 2015. The term sheet was signed by the new chief financial

4

officer, Jay McCarty, on behalf of MDA, and Rosenfelt, on behalf of "Mississippix Studios, LLC and Element Studios LLC." The term sheet described MDA's terms for the release of an additional $6 million loan guarantee. Among other things, it provided that any application to MDA for another loan guarantee "will be considered by the internal loan guaranty committee in accordance with established program processes."

¶9. Rosenfelt applied for this money to make a second movie, but the MDA declined the application, leading to this litigation. Rosenfelt's complaint sought a declaratory judgment that MDA was bound by an enforceable contract, specific performance ordering MDA to execute a guaranty of a loan Rosenfelt had arranged, and money damages. The chancery court initially granted partial summary judgment in favor of Rosenfelt, finding that MDA's letter on April 7, 2014, "created an unconditional obligation on the MDA to a revolving loan guaranty of $10 million over five years to fund Rosenfelt's Mississippi-based film projects," and that "MDA [was] required to guarantee a loan to Rosenfelt for up to $7.5 million dollars." The chancery court further opined that the letter was "unambiguous."

¶10. Rosenfelt later filed another motion for summary judgment seeking specific performance of the guaranty. The MDA responded with a summary-judgment motion of its own, challenging Rosenfelt's standing to bring any of his claims. This time the chancery court agreed with the MDA; it dismissed the complaint on two grounds: the contract was not recorded in the official minutes of the MDA, and both Rosenfelt and Element Studios, LLC, lacked standing. Rosenfelt now appeals that decision.

**STANDARD OF REVIEW**

¶11. This Court reviews a grant or denial of summary judgment de novo. *Hardy v. Brock*, 826 So. 2d 71, 74 (Miss. 2002). Standing is also a question of law which we review de novo. *Brown v. Miss. Dept. of Human Servs.*, 806 So. 2d 1004, 1005 (Miss. 2000).

**DISCUSSION**

¶12. On appeal, Rosenfelt argues the chancery court erred when it found he did not have standing to pursue these claims. This Court has held that "standing is a jurisdictional issue which may be raised any party or the Court at any time." *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000). "In Mississippi, parties have standing to sue when they assert a colorable interest in the subject matter of the litigation or experience an adverse affect from the defendant's conduct." *Miss. Manufactured Housing Ass'n v. Bd. of Alderman of Canton*, 870 So. 2d 1189, 1192 (Miss. 2004). "The individual's legal interest or entitlement to assert a claim must be grounded in some legal right recognized by law, whether by statute or by common law." *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 827 (Miss. 2009) (citations omitted). Put another way, standing is determined by "[w]hether the particular plaintiff had a right to judicial enforcement of a legal duty of the defendant or whether a party plaintiff in an action for legal relief can show in himself a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action." *Id.* (citation omitted).

6

¶13.   Rosenfelt cites three documents in the record he contends evidence an agreement between him, personally, and the MDA.  The first two are letters from MDA officials dated June 2013 and April 2014.  They are both addressed to Rosenfelt as president of Element Pictures.  The June 2013 letter states that Mississippi "will commit to your Mississippi Production Investment Plan (attached hereto) for an initial investment of ten million dollars." The investment plan mentions two entities: Element Films and Element Pictures.[1]  It says it is "designed by Element Films."  It further states, in its most active and operative language, that if the plan is accepted, "Element Films will form MISSISSIP-PIX," and Mississippix will go on to do various things.  The plan also includes an "executive summary" that lays out "the company's" management team; it identifies Rosenfelt as "Chairman," then says he is "president of Element *Pictures*" (our emphasis) and later refers to Rosenfelt as "president of Element."  The plan does not say Rosenfelt will do anything in a personal capacity; it just identifies him as chairman (presumably of Element Films) and president of Element Pictures. The MDA's 2013 letter is signed by "Kathy Gelston, Chief Financial Officer."

¶14.   The MDA's 2014 letter is also addressed to Rosenfelt as president of Element Pictures and states that Mississippi "will commit to a revolving loan guarantee of ten million dollars for five years."  It is signed by Brent Christensen, the executive director of the MDA.

---

[1] The Appellant here is Element Studios, LLC, a Mississippi limited liability company.  Element Films and Element Pictures are apparently LLCs organized in the State of Louisiana.  They are all presumably controlled by Rosenfelt, but it is unclear what legal or contractual relationships, if any, the various LLCs have to each other.

¶15.	Finally, Rosenfelt cites the 2015 terms sheet, which recites terms relating to a $10 million revolving loan guarantee and notably includes that applications for loan guarantees "will be considered by the internal loan guaranty committee in accordance with established program processes." The 2015 terms sheet is signed by "Jay McCarty, Mississippi Development Authority." McCarty was at that time the MDA's chief financial officer. The term sheet was also signed by Rosenfelt as "Adam Rosenfelt, Mississippix Studios, LLC / Element Studios LLC."

¶16.	Thus, the standing issue essentially boils down to a question of contract interpretation. This is well-suited for summary judgment: "[q]uestions of contract construction and ambiguity are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (Miss. 2012) (citation omitted). Only if we find "the [material] terms of the contract to be ambiguous or subject to more than one interpretation" will the case "be submitted to the trier of fact, and summary judgment . . . not appropriate." *Id.*

¶17.	Rosenfelt contends on appeal that the 2013/2014 letters and the 2015 terms sheet reflect an agreement between him, personally, and the MDA. He alleges that the letters are addressed to him and that he signed the 2015 terms sheet. But he offers no supporting argument or authority, and as we explained above, the letters were clearly and unambiguously addressed to Rosenfelt in his capacity as president of Element Pictures, the

8

Louisiana LLC. The 2015 terms sheet was also signed by Rosenfelt only as an officer of the two Mississippi LLCs, not in his individual capacity.

¶18.    All of the alleged contract documents were either addressed to Rosenfelt in his capacity as an officer of an LLC or were signed by him in the same capacity. None of the documents even suggest Rosenfelt would receive any benefit or incur any obligations except in his capacity as an officer or owner of the LLCs. While there may be some ambiguity as to which Louisiana LLC was the offering party in 2013 plan, there is no conceivable interpretation of any of these written documents that Rosenfelt, personally, was a party to any agreement. Thus, we conclude that parol evidence cannot be considered on the specific question of whether Rosenfelt, personally, was one of the contracting parties.

¶19.    Because the alleged agreements were with the LLCs Rosenfelt was representing, he has no right to enforce the agreements personally, even if the LLCs were entirely owned and operated by him. "It is fundamental corporation and agency law that a corporation's shareholder and contracting officer has no rights and is exposed to no liability under the corporation's contracts." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 471, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006). Under Mississippi law, "an action to redress injuries to a corporation, whether arising in contract or in tort[,] cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative." *Bruno v. Se. Servs. Inc.*, 385 So. 2d 620, 622 (Miss. 1980) (quoting *Schaffer v. Universal Rundle*

9

***Corp.***, 397 F.2d 893 (5th Cir. 1968)). "The rule applies even though the complaining stockholder owns all or substantially all of the stock of the corporation." ***Id.*** (citations omitted).

¶20.    Rosenfelt "elected to conduct [his] business through a limited liability company and . . . just as [he] received protection of [his] personal assets from liability in doing so . . . . [he] gave up standing to claim damages to the LLC, even if [he] also suffered personal damages as a consequence." ***Painter's Mill Grille, LLC v. Brown***, 716 F.3d 342, 347-48 (4th Cir. 2013).  The law takes a dim view of attempts by those using the corporate form to cast it off whenever it suits their convenience to do so. ***Mont. Power Co. v. Fed. Power Comm'n***, 185 F.2d 491, 497 (D.C. Cir. 1950).  Rosenfelt thus has no standing to sue in contract or in tort unless a duty was owed to him, personally. *See **Bruno***, 385 So. 2d at 622.

¶21.    Rosenfelt also seeks to show he was a party to the agreements by resort to extrinsic evidence.  He cites his own deposition, but all three of the excerpts he quotes in his brief just offer his own interpretation of the letters' terms or speculate about MDA's motivation; and they do not even necessarily have to be read as Rosenfelt referring to himself in an individual capacity.  Rosenfelt also cites various letters and quotes from officials at MDA suggesting they understood themselves to be dealing with Rosenfelt, personally, rather than the various companies he controlled.  But this also is parol evidence.

¶22.    If a written contract is unambiguous, "the intention of the contracting parties should be gleaned solely from the wording of the contract and parole evidence should not be

10

considered." ***Epperson***, 93 So. 3d at 16.  The contract need not be "fully integrated" such that it encompasses the entire agreement between the parties; if it is partially integrated, that is, if the parties "intend the writing to be the final expression of the terms it contains but not a complete expression of all the terms agreed upon—some terms remaining unwritten," then "evidence of prior or contemporaneous agreements is admissible to supplement its terms though not to contradict it." ***Merk v. Jewel Food Stores Div. of Jewel Cos. Inc.***, 945 F.2d 889, 892-93 (7th Cir. 1991).  We emphasize that what makes an agreement "integrated" or "partially integrated" is not whether the contract unambiguously settled those terms, but whether the parties *intended* it to be a final agreement.  *See **id.*** Put another way, parol evidence is admissible only "to supplement [the contract's] terms," "not to contradict it." ***Id.*** at 892-93.  As this Court said in ***Epperson***, the parol evidence rule "provides that where a document is incomplete parol evidence is admissible to explain the terms but, in no event, to contradict them." ***Epperson***, 93 So. 3d at 17 (citation omitted).

¶23.    The course-of-performance evidence cited by Rosenfelt is likewise not relevant unless the written agreements are materially ambiguous.  Only "[i]f the intent of the parties is not yet ascertained after 'four corners' analysis" will "the court will employ any applicable canons of contract construction" such as the "practical construction which the parties have placed upon the instrument." ***Warren v. Derivaux***, 996 So. 2d 729, 735 (Miss. 2008) (citations omitted).  *See also* 17A C.J.S. Contracts § 426 (2018) ("The language of an unambiguous contract governs, even in the face of a different interpretation the parties may

11

have placed on the agreement themselves. The parties' construction does not change the terms of the agreement or control or vary the express unambiguous provisions of the instrument itself; thus, the fact that the parties have placed an erroneous construction on an unambiguous contract will not prevent the court from construing the contract properly.").

¶24. Rosenfelt also contends the letters and the terms sheet should be construed against their drafter, MDA. But this is another canon of contract construction, and it also only applies if the parties' intent cannot be derived from the contract's four corners. *See, e.g.*, *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352-53 (Miss. 1990).

¶25. Next, Rosenfelt cites *Vickers v. First Mississippi National Bank*, 458 So. 2d 1055, 1062 (Miss. 1984). But all *Vickers* held is that the shareholder's status as a shareholder did not preclude him from enforcing a contract remedy he would otherwise have if there was a contractual duty owed to him, personally. *See id.* at 1063-64. In that case, the plaintiff was a party to the contract in his individual capacity. *See id.* at 1057. As discussed above, Rosenfelt was not a party to the alleged contracts.

¶26. Nor was Rosenfelt a third-party beneficiary by virtue of his ownership or control of the LLCs. "[A] third party beneficiary may sue for a breach of the contract only when the condition which is alleged to have been broken was placed in the contract for his direct benefit." *Miss. High Sch. Activities Ass'n, Inc. v. Farris*, 501 So. 2d 393, 396 (Miss. 1987) (citation omitted). "A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee." *Id.* Rosenfelt's benefits and

12

obligations under the alleged agreement were "merely derivative" of his position as an owner or officer of the LLCs and were thus incidental to any agreements involving only the LLCs. *See Gerard J.W. Bos & Co., Inc. v. Harkins & Co.*, 883 F.2d 379, 382 (5th Cir. 1989) (applying Mississippi law); *see also Bruno*, 385 So. 2d at 622.

¶27. Finally, there is the question of the standing of Element Studios, LLC. Throughout this litigation, Rosenfelt and Element Studios, LLC, have been represented jointly, and their brief on appeal is almost entirely devoted to arguing that Rosenfelt personally contracted with MDA. The only argument presented as to Element Studios, LLC, is the cursory assertion that it had standing as a third-party beneficiary to an agreement either between the MDA and Rosenfelt or, failing that, between the MDA and Mississippix. As noted above, we reject the contention that an agreement existed between Rosenfelt and the MDA. As to an alleged agreement between Mississippix and the MDA, Rosenfelt and Element Studios, LLC, make no attempt to demonstrate that such an agreement existed or that Element Studios, LLC, was a third-party beneficiary to it. Nor have they briefed the question of whether Element Studios, LLC, has standing by virtue of its being a direct party to an agreement with the MDA, as might be suggested by Rosenfelt's signature as its agent on the 2015 terms sheet. We will not speculate whether this was an oversight or a strategic decision, given the Appellants' obvious preference for the terms of the 2014 letter over the 2015 terms sheet. Instead, we decline to address an issue that has not been briefed on appeal. As the Court of Appeals has stated, "Simply put, we will not act as an advocate for one party

13

to an appeal." *Jefferson v. State*, 138 So. 3d 263, 265 (Miss. Ct. App. 2014). "The appellant must affirmatively demonstrate error in the court below, and failure to do so waives an issue on appeal." *Id.*; *see also* M.R.A.P. 22(a)(3), (7).

¶28. Finally, Rosenfelt and Element Studios, LLC, argue MDA should be equitably estopped from challenging their standing. While it is true that MDA did not raise the standing issue immediately, "standing is a jurisdictional issue [that] may be raised any party or the Court at any time." *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000). The record here reveals that Rosenfelt not only lacks standing, he is seeking to enforce causes of action he does not own and which may actually belong to legally distinct entities that are not parties to this suit. We can find no merit to the estoppel argument.

## CONCLUSION

¶29. We conclude that neither Rosenfelt nor Element Studios, LLC, has shown error in the trial court's dismissal of their suit for want of standing. The remaining issues presented are moot and will not be addressed.

¶30. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**

14