# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00203-COA

**MICHAEL I. HOLMES AND MIKE HOLMES CONSTRUCTION LLC**   **APPELLANTS**

**v.**

**JOHN LANKFORD**   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/03/2022 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | MICHAEL JAMES THOMPSON JR. |
| ATTORNEYS FOR APPELLEE: | ROBERT THOMAS SCHWARTZ CHRISTIAN STRICKLAND |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/14/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     In June 2014, John Lankford and Mike Holmes Construction LLC (MHC) entered into a right-to-mine agreement for a proposed sand and gravel operation on Lankford's property. Michael I. Holmes, the sole member of MHC, was not a party to the agreement. Three years later, when the project did not work out, Holmes and MHC sued Lankford, seeking damages and other relief on five grounds: recovery on a contractor's lien filed on behalf of MHC; breach of contract; quantum meruit; unjust enrichment; and negligent misrepresentation. MHC had been administratively dissolved in 2011 before it entered into the agreement. MHC was never reinstated to do business.

¶2.     Lankford moved for summary judgment on all counts. The circuit court granted summary judgment in Lankford's favor, finding MHC lacked the capacity to sue because it had been administratively dissolved before the complaint was filed. *See* Miss. Code Ann. § 79-29-831(4) (Rev. 2013). With respect to Holmes, the circuit court found that he was not a party to the agreement or the lien, and, thus, he could not maintain the claims for breach of contract or lien recovery in his individual capacity. The circuit court also found that the claims for unjust enrichment and quantum meruit arose from the agreement between MHC and Lankford, so Holmes, individually, was without standing to assert them. Likewise, the circuit court held that Holmes was without standing to assert the negligent misrepresentation claim because it related to Lankford's allegedly inducing MHC to enter the agreement, not Holmes, individually. The circuit court recognized that because Holmes was not a party to the agreement, he might arguably be able to recover for any individual claims apart from the agreement. On this point, however, the circuit court found that Holmes did not present any evidence that would support any such claims in this case.

¶3.     Holmes and MHC[1] appeal from the circuit court's summary judgment in Lankford's favor only with respect to the claims for quantum meruit, unjust enrichment, and negligent misrepresentation. Holmes asserts that he is the real party in interest as to these claims and has standing to pursue them, individually. As such, Holmes asserts that summary judgment

_____

[1] For ease of reference, we will collectively refer to the Appellants as "Holmes" unless otherwise indicated.

2

in Lankford's favor on these claims should be reversed and he be allowed to pursue these claims in the circuit court. For the reasons addressed below, we affirm the circuit court's order granting summary judgment in Lankford's favor.

## STATEMENT OF FACTS

¶4. Lankford owned approximately thirty-five acres on North Klondyke Road in Harrison County, Mississippi. In June 2014, Lankford and "Mike Holmes Construction LLC, Operator" entered a right-to-mine agreement. According to the complaint that MHC and Holmes subsequently filed against Lankford, the agreement was entered into to "memorialize" the parties' "arrangement" that "Plaintiffs had the right to operate a mine on the Property, and that Plaintiff [sic] would make certain improvements to the Property in order to operate a sand and dirt mine. In exchange, Plaintiff was to pay Defendant one dollar ($1.00) for each cubic yard of material produced and sold." Holmes is the sole member of MHC. Holmes, individually, was not named as a party to the agreement, and he did not sign the agreement in his individual capacity.

¶5. For reasons not explained by any party, at some point the arrangement did not work out. On July 15, 2016, Holmes, individually, sent an invoice to Lankford in the amount of $41,500 for "site work on Klondyke [R]d. . . . includ[ing] labor and materials." The invoice was not paid. A lien against Lankford's property in the same amount ($41,500) was filed on behalf of MHC on October 14, 2016. The filed "Claim of Lien" provides that it is "for satisfaction of a claim which became due on July 15, 2016, which is the last date labor,

3

services, and materials were supplied." It is signed under oath by Holmes on behalf of MHC (as a contractor). Holmes did not claim a lien on Lankford's property or sign the lien in his individual capacity.

¶6. In April 2017, Holmes and MHC filed a complaint against Lankford in the Harrison County Circuit Court, First Judicial District, asserting the following claims: Count 1-Payment Action for Recovery of Lien Claim; Count 2-Breach of Contract; Count 3-Quantum Meruit; Count 4-Unjust Enrichment; and Count 5-Negligent Misrepresentation. The "Claim of Lien" was attached to the complaint, as well as the right-to-mine agreement.

¶7. MHC was formed and registered with the Mississippi Secretary of State on December 14, 2006, as a limited liability company (LLC). It was administratively dissolved on December 5, 2011, which was over two years before it entered into the right-to-mine agreement. MHC was never reinstated to conduct business. As such, it had been dissolved for over five years when MHC and Holmes filed the complaint against Lankford.

¶8. Lankford moved for summary judgment on all counts, asserting that the complaint should be dismissed with respect to MHC because it was an administratively dissolved limited liability company and therefore was without capacity to sue pursuant to section 79-29-831(4). That statute provides, "A limited liability company that has been administratively dissolved may not maintain any action, suit or proceeding in any court of this state until such limited liability company is reinstated." Miss. Code Ann. § 79-29-831(4). With respect to Holmes, Lankford asserted that Holmes could not pursue any claims in his individual

4

capacity because they all arose out of the right-to-mine agreement or the lien. Holmes was not a party to the agreement, nor did he sign the lien in his individual capacity.

¶9. In response, Holmes asserted that he was a real party in interest and had standing to assert all five claims because MHC had been administratively dissolved nearly two years before work began on the property. According to Holmes, because MHC was not in existence, only he, individually, could have made the improvements and obtained the permits. As such, Holmes claimed he had a "colorable interest in the subject-matter of the litigation" that was sufficient to allow him to pursue these claims in his individual capacity. He further asserted that the claims for quantum meruit, unjust enrichment, and negligent misrepresentation were not contractual, so he had standing to assert them in his individual capacity for this additional reason.

¶10. Holmes filed a sworn affidavit to accompany his response in which he detailed the improvements made to the property. He itemized the "direct costs related to [the] property improvements and permitting" and attached checks evidencing these payments as an exhibit to his affidavit. All the checks attached to Holmes's affidavit were written on the account of "Mike Holmes Construction, LLC."

¶11. After conducting a hearing, the circuit court granted summary judgment in Lankford's favor. The circuit court relied on section 79-29-831(4) in ruling that MHC lacked the capacity to sue because it had been administratively dissolved before the complaint was filed. Regarding Holmes, the circuit court found that he could not maintain the claims for breach

5

of contract or lien recovery because he was not a party to the agreement and he did not file the lien in his individual capacity.

¶12. The circuit court also granted summary judgment in Lankford's favor with respect to Holmes, individually, on the remaining three claims. Regarding the quantum meruit and unjust enrichment claims, the circuit court found:

> As to the claims for quantum and unjust enrichment, those claims are for the same items alleged to be covered by the Agreement and claim for breach of contract. They are also for the same amounts in the Claim of Lien. The Agreement is a valid contract in this matter. That is, there is no claim or argument that the Agreement is invalid . . . . There can thus be no recovery [by Holmes, individually,] for either quantum meruit or unjust enrichment for those items covered by the Agreement or any contract supporting the Claim of Lien.

The circuit court recognized that "Holmes was not a party to the Agreement which arguably might allow him to recover for any individual claims apart from those covered by the Agreement or some oral contract." The circuit court found, however, that "Holmes has presented no evidence to support any individual claims which would fall outside of the above discussed matters."

¶13. With respect to the negligent misrepresentation claim, the circuit court found that "the Complaint specifically claims that the alleged misrepresentation was that Lankford would allow the property to be operated as a mine. That claim . . . relates only to [MHC]. There is no evidence in this record that any such agreement was reached with Holmes individually." Based on these determinations, the circuit court found that "[t]here are no genuine issues of material fact and Lankford is entitled to judgment as a matter of law."

6

¶14.    Holmes does not appeal the circuit court's summary judgment with respect to the claims for breach of contract or lien recovery.  Holmes appeals only the circuit court's summary judgment in Lankford's favor on the claims for quantum meruit, unjust enrichment, and negligent misrepresentation.

## STANDARD OF REVIEW

¶15.    We review de novo the grant or denial of a summary judgment motion.  *Byram Café Grp. LLC v. Tucker*, 344 So. 3d 844, 846 (¶10) (Miss. 2022).  Summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  *Johnson v. Pace*, 122 So. 3d 66, 68 (¶7) (Miss. 2013).  Although the "evidence is viewed in the light most favorable to the nonmoving party, there must be a material fact issue to preclude summary judgment." *Peak v. Cohee*, 294 So. 3d 604, 607 (¶10) (Miss. 2020).  In this regard, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings[.]" M.R.C.P. 56(e).  Rather, the nonmoving party's "response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.*  "[T]he nonmoving party's claim must be supported by more than a mere scintilla of colorable evidence," *McGee v. Neel Schaffer*

7

*Eng'rs & Planners Inc.*, 350 So. 3d 236, 247 (¶40) (Miss. Ct. App. 2022), *cert. denied*, 350 So. 3d 234 (Miss. 2022), and "[s]ummary judgment is mandated where the nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case." *Ala. Great S. R.R. Co. v. Jobes*, 156 So. 3d 871, 879 (¶21) (Miss. 2015).

## DISCUSSION

### Standing and Real Party in Interest

¶16.    Holmes asserts that he, individually, has standing to sue Lankford to recover for his labor and the expenses he incurred in making improvements to Lankford's property and obtaining permitting to develop and open a mining operation. In particular, Holmes asserts that he has standing to recover damages based upon theories of quantum meruit, unjust enrichment, and negligent misrepresentation. He asserts that he is the real party in interest to pursue these claims, individually. We disagree and therefore affirm the circuit court's order granting summary judgment in Lankford's favor for the reasons addressed below.

¶17.    We begin with an overview of the law concerning "standing" and the definition of a "real party in interest." "Standing is a jurisdictional issue . . . [that is satisfied when there is] a valid, present, and complete cause of action in existence along with a right to relief upon institution of the suit." *Jourdan River Ests. LLC v. Favre*, 278 So. 3d 1135, 1146 (¶40) (Miss. 2019) (citations and internal quotation marks omitted). Because it is a jurisdictional issue, it may be raised by the Court or the parties at any time. *Kirk v. Pope*, 973 So. 2d 981, 989 (¶22) (Miss. 2007). In short, "standing to sue . . . is a right to relief, which goes to the

8

existence of the cause of action." *Favre*, 278 So. 3d at 1146 (¶41) (quoting *Burley v. Douglas*, 26 So. 3d 1013, 1025-26 (¶45) (Miss. 2009) (Kitchens, J., concurring)). "Mississippi has liberal standing requirements." *Est. of Johnson v. Kitchens L. Firm P.A.*, 294 So. 3d 621, 628 (¶19) (Miss. Ct. App. 2019). "Parties have standing to sue when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law." *Id.* (internal quotation marks omitted) (quoting *Hall v. City of Ridgeland*, 37 So. 3d 25, 33 (¶24) (Miss. 2010)).

¶18. Regarding Holmes's real-party-in-interest assertion, Mississippi Rule of Civil Procedure 17(a) provides:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his representative capacity without joining with him the party for whose benefit the action is brought.

M.R.C.P. 17(a). "A 'real party in interest' is defined as a person . . . who is actually and substantially interested in subject matter as distinguished from one who has only a nominal, formal, or technical interest in or connection with it." *Est. of Johnson*, 294 So. 3d at 629 (¶22).

¶19. Also relevant to our analysis is that, under Mississippi law, an LLC member may not maintain an action in his own name to redress injuries to the LLC. *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 517-18 (¶¶19-20) (Miss. 2018). In *Rosenfelt*, a film producer and his

9

LLC sued the Mississippi Development Authority (MDA), seeking to enforce a purported agreement that the MDA would invest in the production of movies in Mississippi, among other issues. *Id.* at 515 (¶9). The chancery court granted summary judgment for the MDA and against Rosenfelt, individually, and the LLC. On appeal, the supreme court affirmed summary judgment in the MDA's favor. *Id.* at (¶9).

¶20. With respect to Rosenfelt, the supreme court held that he was not a party to any agreement in his individual capacity and therefore lacked standing to bring any claims as an individual, stating, "Because the alleged agreements were with the LLCs Rosenfelt was representing, he has no right to enforce the agreements personally, even if the LLCs were entirely owned and operated by him." *Id.* at 517 (¶19). Relying on corporate law, the supreme court recognized that "[u]nder Mississippi law, 'an action to redress injuries to a corporation, whether arising in contract or in tort[,] cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative.'" *Id.* (quoting *Bruno v. Se. Servs. Inc.*, 385 So. 2d 620, 622 (Miss. 1980)). "The rule applies even though the complaining stockholder owns all or substantially all of the stock of the corporation." *Id.* (internal quotation mark omitted).

¶21. Applying these principles in the LLC context, the supreme court held, "Rosenfelt 'elected to conduct [his] business through a limited liability company and . . . just as [he] received protection of [his] personal assets from liability in doing so . . . [he] gave up

10

standing to claim damages to the LLC, even if [he] also suffered personal damages as a consequence.'" *Id.* at (¶20) (quoting *Painter's Mill Grille LLC v. Brown*, 716 F.3d 342, 347-48 (4th Cir. 2013)).

¶22. In light of these principles, we examine Holmes's standing and real-party-in-interest arguments with respect to each claim he asserts.

### A. Quantum Meruit

¶23. "Quantum meruit recovery is a contract remedy which may be premised either on express or 'implied' contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant's reasonable expectation of compensation." *Waste Mgmt. of Miss. Inc. v. Jackson Ramelli Waste LLC*, 301 So. 3d 635, 642 (¶33) (Miss. 2020) (quoting *Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 514 (¶56) (Miss. 2007)). The supreme court explained in *Tupelo Redevelopment*:

> The essential elements of recovery under a quantum meruit claim are: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.

*Tupelo Redev.*, 972 So. 2d at 514-15 (¶56) (internal quotation marks omitted).

¶24. Based upon these factors, we find that Holmes, individually, is without standing and is not the real party in interest to assert a quantum meruit claim. Specifically, we find that there is insufficient evidence in the record to create a genuine issue of material fact that

11

Holmes, individually, had a "reasonable expectation of compensation," *id.* at 514 (¶56), or that Lankford, under the circumstances in this case, was expected to pay Holmes, individually, for any services performed or expenses incurred under the right-to-mine agreement. *See*, *id.*, at 514-15 (¶56). Indeed, as the circuit court pointed out, "[n]either the allegations of the Complaint nor Holmes'[s] Affidavit [submitted in support of his summary judgment response] reflect that there was ever an agreement for Lankford to pay for the improvements [to the property] or other costs [that Holmes seeks]." Rather, "both reflect that the improvements and costs were to be made as part of the agreement to use the property to mine," not costs to be reimbursed or paid by Lankford.

¶25. But even if these costs were recoverable under the agreement, we find no evidence in the record of any "express or implied contract" between Lankford and Holmes, individually; nor is there any evidence that Holmes, individually, could reasonably expect reimbursement or payment. Holmes held himself out as operating as an LLC (MHC), the agreement was between Lankford and MHC only, and the bank account that Holmes used to pay claimed expenses was in MHC's name.

¶26. We recognize that Holmes filed an affidavit in support of his summary judgment response that listed expenses "he" incurred on the project. As evidence of payment, however, Holmes attached checks written on the MHC bank account.

¶27. We also acknowledge that the July 15, 2016 invoice for $41,500 that Holmes submitted to Lankford for "improvements" to the property was submitted by Holmes,

individually, and the invoice specified that "all checks [be made] payable to Michael I. Holmes." Holmes described, in detail, the work performed in his summary judgment affidavit. But in October 2016, Holmes filed a contractor's lien on the property in MHC's name, only, for $41,500—the same amount reflected in the invoice Holmes submitted to Lankford in July 2016. We find that this is relevant because pursuant to Mississippi Code Annotated section 85-7-403 (Supp. 2014), a contractor may create a lien "on . . . property for which they furnish labor, services or materials" for the owner, with recovery limited to the "amount due and owing the lien claimant under the terms of its express or oral contract." Miss. Code Ann. § 85-7-403(1)-(3). As further provided in section 85-7-405, such lien is enforceable only upon the contractor meeting certain conditions, including "substantial compliance by the party claiming the lien with the party's contract . . . for [the] work performed or labor, services or material provided . . . ." Miss. Code Ann. § 85-7-405(1)(a) (Supp. 2014) (emphasis added).

¶28.    In this case, the lien provides that *MHC* "claims a lien" in the amount of $41,500 on Lankford's property "for satisfaction of a claim which became due on July 15, 2016," which is the same date as the invoice Holmes sent to Lankford. The lien is signed under oath by Holmes on behalf of "Mike Holmes Construction, LLC." Under these circumstances, we find that Holmes's claim that he individually has standing and is the real party in interest to assert a quantum meruit claim is without merit.

B.    **Unjust Enrichment**

13

¶29. "Unjust enrichment is an equitable remedy" that

> applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Koval v. Koval*, 576 So. 2d 134, 136 (Miss. 1991) (citations and internal quotation marks omitted) (quoting *Est. of Johnson v. Adkins*, 513 So. 2d 922 (Miss.1987)). "Stated differently, unjust enrichment is a modern designation for the doctrine of quasi-contracts and the basis for an action for unjust enrichment lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his." *Hughes v. Shipp*, 324 So. 3d 286, 291 (¶12) (Miss. 2021) (internal quotation marks omitted) (quoting *Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co. Inc.*, 342 So. 2d 1308, 1311 (Miss. 1977)). We find no basis for implying a promise from Lankford to Holmes, *individually*, that Lankford would reimburse Holmes for expenses he incurred and labor he performed under the agreement between *MHC* and Lankford. Despite the fact that MHC had been administratively dissolved even before the agreement was memorialized, Holmes nevertheless signed and entered into the contract with Lankford only on MHC's behalf, Holmes continued to operate as MHC throughout the project, and the complaint was brought by both MHC and Holmes. As such, based upon the same circumstances delineated above, we find without merit Holmes's argument that he individually has standing and is the real party in interest to recover damages based upon a theory of unjust enrichment.

14

### C. Negligent Misrepresentation

¶30. Holmes also asserts that he has standing and is the real party in interest to assert a negligent misrepresentation claim against Lankford but fails to offer any argument or supporting evidence that he, personally, was induced to enter the right-to-mine agreement. The only alleged misrepresentation identified in the complaint is that "[Lankford] misrepresented that he would allow Plaintiffs to operate a mine on the Property." This allegation, however, relates only to MHC because only MHC entered into the agreement. As the circuit court recognized, and as we likewise find upon our own record review, "[t]here is no evidence that any such agreement was reached with Holmes individually." Accordingly, we find that Holmes, individually, is without standing and is not the real party in interest to assert a negligent misrepresentation claim.

### D. *Rosenfelt v. Mississippi Development Authority*, 262 So. 3d 511 (Miss. 2018)

¶31. In sum, we find that the principles delineated in *Rosenfelt* apply here. *Rosenfelt*, 262 So. 3d at 517-18 (¶¶19-20). "[Holmes] elected to conduct his business through a limited liability company and . . . just as he received protection of his personal assets from liability in doing so . . . he gave up standing to claim damages to the LLC, even if he also suffered personal damages as a consequence.'" *Id.* at 517 (¶20) (internal quotation marks omitted). This principle applies whether the injuries to the LLC "aris[e] in contract or in tort." *Id.* at (¶19). Borrowing from the supreme court's observation in *Rosenfelt*: "The law takes a dim view of attempts by those using the corporate form to cast it off whenever it suits their

15

convenience to do so. . . . [Holmes] thus has no standing to sue in contract or in tort unless a duty was owed to him, personally." *Id.* at 517-18 (¶20) (citation omitted). Holmes showed no such owed duty under any of the three grounds he attempts to pursue. Based upon this analysis, we find that Holmes, individually, is without standing and is not the real party in interest to assert a claim for quantum meruit, unjust enrichment, or negligent misrepresentation.

### E.     Holmes's Ultra Vires/Invalid Agreement Argument

¶32.    Holmes asserts on appeal that there was never a valid right-to-mine agreement at all because MHC had been administratively dissolved in December 2011, over two years before MHC entered into the June 2014 agreement with Lankford. According to Holmes, because MHC was dissolved, it was without the power or capacity to contract—i.e., MHC's actions were essentially ultra vires—and therefore no contract was ever formed. From this, Holmes argues that because there never was a valid contract between Lankford and MHC in the first place, the agreement's purported existence cannot bar the claims for quantum meruit, unjust enrichment, and negligent misrepresentation against Lankford.

¶33.    Based upon our review of the record, however, we find that Holmes never made this argument before the trial court. Instead, Holmes argued before the trial court, for example, that

> [i]f the LLC was administratively dissolved in 2011, two years before Holmes commenced work on Lankford's property, it only makes sense the work was performed, and expenses advanced by Holmes individually. The only person who performed work and advanced monies for the development of the mine

16

is Plaintiff Holmes, in his individual capacity.

Holmes did not assert that the agreement itself was invalid or that he was entitled to recover based upon theories of quantum meruit, unjust enrichment or negligent misrepresentation based upon MHC's purported lack of power to contract. On the contrary, MHC was also a plaintiff in the lawsuit against Lankford and sought recovery under the agreement and pursuant to the contractor's lien that Holmes filed only on MHC's behalf. The contractor's lien was based upon *MHC's* "substantial compliance" with the agreement. *See* Miss. Code Ann. § 85-7-405.

¶34. Although Holmes argued before the circuit court that quantum meruit or unjust enrichment may apply if the agreement were found "unenforceable," he did not raise any argument that the agreement never existed because MHC's actions were ultra vires. This is an entirely separate theory under Mississippi law and Holmes never addressed it.

¶35. In short, the validity of the agreement was never put in issue by either party in the circuit court, as the circuit court specifically stated in its final judgment, "The Agreement is a valid contract in this matter. That is, there is no claim or argument that the Agreement is invalid . . . ." For these reasons, we find that this argument is waived on appeal. "It is well-settled that issues presented for the first time on appeal are procedurally barred from consideration." *McKenzie v. Miss. Mun. Serv. Co.*, 193 So. 3d 676, 680 (¶15) (Miss. Ct. App. 2016) (quoting *Lewis v. Forest Fam. Prac. Clinic P.A.*, 124 So. 3d 654, 658 (¶16) (Miss. 2013)) (rejecting an argument never raised before the trial court in plaintiff's appeal

17

from summary judgment in defendant's favor).

¶36.   Notwithstanding the procedural bar, even assuming the contract was ultra vires, we find that Holmes's attempt to utilize this doctrine as he does here is wholly without merit. Holmes operated as MHC (under the protection of the Mississippi Limited Liability Company Act), entered into the agreement only on MHC's behalf, filed a sworn contractor's lien solely on MHC's behalf, wrote checks on an account solely in MHC's name, and included MHC in the lawsuit against Lankford.  Further, there is no evidence in the record that Lankford knew that MHC had been administratively dissolved.

¶37.   Nevertheless, Holmes now argues that MHC was without power to contract, the agreement was therefore invalid, and thus he, individually, should be able to recover for his labor and expenses.  But applying the ultra vires doctrine in this manner would circumvent the sound principles explained in *Rosenfelt* and the clear mandate of section 79-29-831(4), which prohibits an administratively dissolved LLC from maintaining an action until it is reinstated.  Such an argument likewise ignores the plain language of section 79-29-831(2), which provides that "the administrative dissolution of a limited liability company shall not impair the validity of any contract . . . ."  Miss. Code Ann. § 79-29-831(2).  We will not apply the doctrine of ultra vires under these circumstances.  *See, e.g., Nat'l Sur. Co. v. Hall-Miller Decorating Co.*, 104 Miss. 626, 61 So. 700, 703 (1913) (finding in the comparable corporate context that the law looks "with disfavor upon the defense of ultra vires" and that the doctrine "should not be allowed to prevail[] where it would defeat the

18

ends of justice, or work a legal wrong").

¶38.   For these additional reasons, we reject Holmes's assertions that he has standing or is the real party in interest to pursue the claims for quantum meruit, unjust enrichment, or negligent misrepresentation.  Summary judgment in Lankford's favor therefore is affirmed.

¶39.   **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**